Nicole Owens
Executive Director
Deborah A. Czuba, Idaho Bar No. 9648
Mary E. Spears, Indiana Bar No. 27353-49
Assistant Federal Defenders
Federal Defender Services of Idaho
702 W. Idaho Street, Suite 900
Boise, ID 83702
Telephone: (208) 331-5530
Facsimile: (208) 331-5559
ECF:  Deborah_A_Czuba@fd.org
      Mary_Spears@fd.org

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| **GERALD ROSS PIZZUTO, JR.,**<br><br>Plaintiff,<br><br>v.<br><br>**JOSH TEWALT**, Director, Idaho Department of Correction, in his official capacity, **TIMOTHY RICHARDSON**, Warden, Idaho Maximum Security Institution, in his official capacity, **RAUL LABRADOR**, Attorney General, Idaho Attorney General's Office, in his official capacity,<br><br>Defendants. | CASE NO. _____<br><br>**COMPLAINT FOR EQUITABLE, DECLARATORY, AND INJUNCTIVE RELIEF** |

## I. Nature of the Action

1. Plaintiff Gerald Ross Pizzuto, Jr. is a death-row inmate in Idaho[1] who brings this action pursuant to 42 U.S.C. § 1983 for violations and threatened

---

[1] Mr. Pizzuto refers to Idaho as "Idaho," "the State of Idaho," and "the State." Likewise, throughout this complaint, Mr. Pizzuto refers to the Defendants, variously,

COMPLAINT – Page 1

violations of his constitutional rights in connection with the State's effort to execute him.

2. Mr. Pizzuto hereby seeks injunctive and declaratory relief prohibiting Defendants from seeking or preparing to execute him until they have secured lethal injection drugs which comport with constitutional demands.

## II. Justiciable Case or Controversy

3. For the reasons set forth below, absent judicial intervention, Mr. Pizzuto is and continues to be tortured by the State of Idaho and the Idaho Department of Corrections.

4. There is a real and justiciable case or controversy between the parties.

## III. Jurisdiction and Venue

5. This action arises under 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments to the United States Constitution.

6. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights violations), 2201(a) (declaratory relief), and 2202 (further relief).

7. The Court has personal jurisdiction over the Defendants as they are residents of the State of Idaho and are presently located in the State of Idaho, or are appointed officials of the State of Idaho, or otherwise acting on behalf of the State of Idaho.

---

as "the Defendants," "the State," "IDOC," and other phrases, as appropriate. His use of these expressions does not limit the scope of the claims, which are brought against each and every named defendant.

COMPLAINT – Page 2

8. Venue in this Court is proper under 28 U.S.C. § 1391 because most of the events giving rise to the claims—including Mr. Pizzuto's potential execution and the procurement and maintenance of drugs used in that execution—have occurred, are occurring, or will occur in the District of Idaho.

9. Venue is further proper because, upon information and belief, the Defendants all reside in the District of Idaho.

## IV. Parties

10. Mr. Pizzuto is a person within the jurisdiction of the State of Idaho.

11. Mr. Pizzuto is an inmate under the supervision of the Idaho Department of Correction ("IDOC").

12. Mr. Pizzuto is confined at the Idaho Maximum Security Institution ("IMSI").

13. Mr. Pizzuto is under sentence of death.

14. As set forth in greater detail below, the Defendants are state officials responsible for developing, overseeing, and/or implementing death by lethal injection in Idaho.

15. Defendant Josh Tewalt ("Director Tewalt" or "now-Director Tewalt") is the Director of IDOC.

16. Director Tewalt is responsible for approving the substances and procedures to be used in any execution performed by IDOC.

17. Defendant Timothy Richardson ("Warden Richardson") is Warden of IMSI.

18. Warden Richardson is the official executioner for inmates in Idaho state custody.

19. Defendant Raúl Labrador is the Attorney General of the State of Idaho.

20. Upon information and belief, Mr. Pizzuto and the Defendants are all United States citizens.

21. The Defendants are all officials of the State of Idaho.

22. All of the actions that have been and will be taken by the Defendants towards executing Mr. Pizzuto and any other actions at issue in this Complaint were or will be taken under color of state law.

23. The Defendants are all sued in their official capacities.

V. **General Factual Allegations**

24. Mr. Pizzuto incorporates each and every statement and allegation set forth throughout this Complaint as if fully rewritten.

25. Mr. Pizzuto was convicted of first-degree murder for the killing of Delbert and Berta Herndon and sentenced to death in Idaho County District Court.

26. Mr. Pizzuto's murder convictions and sentence were upheld on direct appeal in 1991.

27. On May 6, 2021, the Attorney General sought and obtained a death warrant for Mr. Pizzuto. The warrant scheduled Mr. Pizzuto's execution for June 2, 2021. When the warrant was issued, Mr. Pizzuto was taken from J-Block at the Idaho Maximum Security Institution and moved to the Execution Unit in F-Block. The

Execution Unit is a separate building that provides for complete isolation of the condemned from other inmates.

28. Mr. Pizzuto was asked to select witnesses for his execution. Mr. Pizzuto also was asked about the disposition of his property and his remains.

29. On May 18, 2021, fifteen days before his execution, the Commission of Pardons and Parole notified the Federal Defender Services of Idaho and the Attorney General of their intention to hold a commutation hearing for Mr. Pizzuto. The Second Judicial District Court for the County of Idaho issued an order the same day staying the execution until the conclusion of commutation proceedings.

30. A commutation hearing took place on November 30, 2021.

31. On December 30, 2022, the Commission of Pardons and Parole recommended that commutation be granted and that Mr. Pizzuto's two death sentences be changed to sentences of life in prison without the possibility of parole.

32. Approximately ten minutes after the Commission issued its recommendation, Governor Brad Little rejected the Commission's decision.

33. On November 16, 2022, the Attorney General sought and obtained another death warrant for Mr. Pizzuto. The warrant scheduled Mr. Pizzuto's execution for December 15, 2022. When the warrant was issued, Mr. Pizzuto was taken from J-Block at the Idaho Maximum Security Institution and moved to an isolated cell in C-Block.

34. Also on November 16, 2022, Director Tewalt informed the Office of the Attorney General that the Department of Corrections was "not in possession of the

COMPLAINT – Page 5

chemicals necessary to carry out an execution by lethal injection." IDOC Serves Death Warrant to Gerald Pizzuto (Nov. 16, 2022), *available at* https://www.idoc.idaho.gov/content/news/idoc-serves-death-warrant-gerald-pizzuto.

35. Mr. Pizzuto was again asked to select witnesses for his execution. Mr. Pizzuto also was once more asked about the disposition of his property and his remains.

36. On November 30, 2022, fifteen days prior to Mr. Pizzuto's execution, Director Tewalt informed the Attorney General's Office that the Department of Corrections had been unable to obtain the necessary chemicals to carry out Mr. Pizzuto's execution. The Director stated that in his professional judgment it was "in the best interest of justice to allow the death warrant to expire and stand down our execution preparation." Exhibit 1 (attached hereto).

37. The same day, the Attorney General filed a notice in the Federal District Court of Idaho attaching the Director's memo and stating "IDOC does not have the necessary chemicals to carry out the execution on December 15, 2022. Execution preparation by IDOC will cease and the death warrant will be allowed to expire." Exhibit 2 (attached hereto).

38. Mr. Pizzuto continued to be housed in an isolated cell in C-Block until the evening of December 16, 2022.

39. In the aftermath of these two warrants, Mr. Pizzuto has had intense psychological symptoms. He loses track of time and dissociates from reality. He

experiences intrusive thoughts regarding his experiences, even when he is trying not to think about a future execution.

40. Mr. Pizzuto's sleep has been greatly disturbed. He often does not sleep more than a few hours at night. He suffers from many intrusive thoughts of the experiences at night.

41. By statute, lethal injection is the only authorized method of execution in Idaho.

42. The same statute gives the IDOC Director the power and responsibility to approve the lethal injection protocols and methods.

43. On February 24, 2023, the State sought another death warrant for Mr. Pizzuto. The Attorney General has admitted publicly that as of the date of filing, the State still does not possess the necessary chemicals to carry out an execution by lethal injection. Exhibit 3 (attached hereto).

44. Upon information and belief, the Attorney General takes the position that he is legally required to continue to seek and re-seek death warrants for Mr. Pizzuto, whether at regular or irregular intervals and whether or not the State has the necessary lethal injection chemicals, until Mr. Pizzuto dies of natural causes or is executed.

45. Also, upon information and belief, the Attorney General sought and obtained the February 24th death warrant against Mr. Pizzuto with the expectation that it, like the November 16th warrant, would once again not result in an execution.

## VI. Violation of Mr. Pizzuto's rights under the Eighth Amendment to be free from cruel and unusual punishment.

46. Mr. Pizzuto repeats and realleges paragraphs 1 through 45 as though fully set forth herein.

47. The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. Amend. VIII.

48. The U.S. Supreme Court has previously described punishments to be unconstitutionally cruel "when they involve torture or a lingering death," *In re Kemmler*, 136 U.S. 436, 447 (1890), or when they "involve the unnecessary and wanton infliction of pain," *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). The Eighth Amendment forbids "forms of punishment that intensified the sentence of death with a (cruel) superadd[ition] of terror, pain, or disgrace." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1124 (2019).

49. The U.S. Supreme Court has also stated that "a series of abortive attempts" at execution raise an Eighth Amendment claim. *Baze v. Rees*, 553 U.S. 35, 50 (2008); *see also Glass v. Louisiana*, 471 U.S. 1080, 1085–86 (1985).

50. The setting of multiple execution dates, without the ability to actually carry out the intended execution, constitutes cruel and unusual punishment under the Eighth Amendment.

51. What Defendants did and are doing to Mr. Pizzuto does not fall within this society's standards for a constitutional execution. The setting of multiple execution dates has been psychologically traumatizing to Mr. Pizzuto.

52. While *Bucklew* is an opinion concerning the summary judgment standard, it is instructive on the core pleading requirements on a cruel and unusual execution claim: a plaintiff must allege (1) that a state's chosen execution method cruelly "superadds" pain to the death sentence; and (2) there exists a readily-available alternative method of execution to the method the state is currently pursuing, which alternative would "clear[ly] and considerabl[y]" reduce the risk of severe pain. *See Bucklew*, 139 S. Ct. at 1125, 1130.

53. Mr. Pizzuto can establish both of these elements. First, it is clear that the State has inflicted profound psychological trauma by bringing Mr. Pizzuto to the precipice of an execution and propounded this trauma by not having the necessary lethal chemicals to actually proceed. Second, as an alternative, the State merely needs to refrain from seeking a new warrant until it can establish that it actually has the means to carry out an execution.

## VII. Violation of Mr. Pizzuto's rights under the Fourteenth Amendment to procedural due process.

54. Mr. Pizzuto repeats and realleges paragraphs 1 through 53 as though fully set forth herein.

55. The Fourteenth Amendment prohibits the deprivation of life, liberty, or property without due process of law.

56. What constitutes "due process" is a "flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Several factors are applicable: the private interest affected; the risk entailed by an illegal deprivation of that interest and the probable value of any procedural safeguards that could be put

COMPLAINT – Page 9

in place; and the State's interest, including the economic or administrative burden of implementing those additional procedural safeguards. *Id.* (quoting *Mathews v. Eldridge*, 424 U.S. 319, 325 (1976)).

57. Mr. Pizzuto has a protected liberty interest in not being subjected to a cruel and unusual execution. *Villegas Lopez v. Brewer*, 680 F.3d 1068, 1083 (9th Cir. 2012) (Berzon, J., concurring in part and dissenting in part).

58. Additionally, the risk of an illegal deprivation – the risk of State-inflicted psychological torture – is great. But the only procedural safeguard necessary to avoid that risk is to simply refrain from seeking a death warrant until the State is capable of carrying out the actual execution. The value of such a safeguard thus is commensurate with the severity of the deprivation of Mr. Pizzuto's liberty interest.

59. Finally, the State's own interest, which is to say the economic or administrative burden of implementing this safeguard, is minimal. Indeed, given the increased burden on IMSI and IDOC staff tasked with preparing for an illusory execution, it in fact benefits the State to provide this minimal additional amount of process.

60. All of the factors relevant to determining whether there has been an actionable due process violation thus weigh in Mr. Pizzuto's favor.

## VIII. Prayer for Relief

61. In light of the above, Mr. Pizzuto respectfully requests that the Court:

    a) Stay the February 24, 2023 death warrant against Mr. Pizzuto.

b) Enjoin the Defendants from seeking any death warrants until they can establish to the Court that they have obtained the necessary lethal chemicals to carry out an execution.

c) Enjoin the Defendants from undertaking any execution preparations until they can establish to the Court that they have obtained the necessary lethal chemicals to carry out an execution.

d) Grant any such other relief that is just and proper.

DATED this 24th day of February 2023.

/s/ Mary E. Spears
Mary E. Spears
Deborah A. Czuba
Federal Defender Services of Idaho