UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GERALD ROSS PIZZUTO, JR., <br><br> Plaintiff, <br><br> v. <br><br> JOSH TEWALT, Director, Idaho Department of Correction, in his official capacity, TIMOTHY RICHARDSON, Warden, Idaho Maximum Security Institution, in his official capacity, RAUL LABRADOR, Attorney General, Idaho Attorney General's Office, in his official capacity, <br><br> Defendants. | Case No. 1:23-cv-00081-BLW <br><br> **MEMORANDUM DECISION AND ORDER** |

Before the Court is Defendants' Motion to Dismiss (Dkt. 20).[1] For the reasons explained below, the Court will partially grant and partially deny the motion.[2]

---

[1] The defendants in this matter are Josh Tewalt, Director of the Idaho Department of Correction, Timothy Richardson, Warden of the Idaho Maximum Security Institution, and Raul Labrador, the Attorney General of Idaho. Each is sued in his official capacity.

[2] Pizzuto filed this case *in forma pauperis* (IFP). Courts must perform an initial review of the complaint in any IFP action to determine whether the lawsuit is "frivolous, malicious, fail[s] to state a claim upon which relief may be granted, or seek[s] monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B). This case is unique because Defendants filed their Motion to Dismiss (Dkt. 20) before the Court had completed its initial review. Accordingly, this Order both resolves Defendants' Motion and undertakes the initial review required under § 1915(e).

## BACKGROUND[3]

Plaintiff Gerald Ross Pizzuto, Jr. is a death-row inmate being held at the Idaho Maximum Security Institution (IMSI). He was convicted on two charges of first-degree murder and given two death sentences in 1986. In the years since, he has pursued direct appeals and collateral attacks in state and federal court, challenging his convictions and sentences. In each case, the State of Idaho has successfully defended against Pizzuto's legal challenges. Now, thirty-seven years after Pizzuto's death sentences were imposed, the State seeks to execute him.

On May 6, 2021, the Idaho Attorney General sought and obtained a death warrant in state court setting Pizzuto's execution for June 2, 2021. *Compl.* ¶ 27, Dkt. 1. Pursuant to Idaho Code § 19-2705(3), when the warrant issued, the IMSI Warden moved Pizzuto from his cell in J-Block to solitary confinement in the Execution Unit, located in a separate building. *Id.* He was kept there in complete isolation from the other inmates and, in accordance with the Idaho Department of Correction's (IDOC's) Standard Operating Procedure 135, IDAPA 135.02.01.001, was asked to select witnesses for his execution and indicate his wishes for disposition of his property and remains. *Id.* ¶ 28.

---

[3] The Court assumes the truth of all factual allegations in Pizzuto's Complaint (Dkt. 1) and relies upon those allegations in this Background section.

Fifteen days before the scheduled execution, the Commission of Pardons and Parole (the "Commission") notified the Attorney General that it would conduct a commutation hearing for Pizzuto in the fall. *Id.* ¶ 29. That same day, the Second Judicial District Court of Idaho entered an order staying Pizzuto's execution until the Commission could conclude its commutation proceedings. *Id.* On December 30, 2021, the Commission voted to recommend reducing Pizzuto's sentences to life in prison without the possibility of parole. *Id.* ¶ 31. But Governor Brad Little promptly rejected that recommendation. *Id.* ¶ 32.

Three months later, on November 16, 2022, the Attorney General obtained a second death warrant, this time setting Pizzuto's execution for December 15, 2022. *Id.* ¶ 33. Once again, Pizzuto was moved to the isolated Execution Unit to await execution and was asked to identify execution witnesses and direct the disposition of his property and remains. *Id.* ¶ 35. That same day, however, Director Tewalt informed the Attorney General that IDOC "was not in possession of the chemicals necessary to carry out an execution by lethal injection." *Id.* ¶ 34.

On November 30, 2022, fifteen days before the second scheduled execution, Director Tewalt confirmed that IDOC would not be able to obtain execution chemicals in time, *id.* ¶ 36, and the Attorney General notified the Court that "[e]xecution preparation by IDOC will cease and the death warrant will be allowed

to expire." *Id.* ¶ 37. The death warrant expired on December 15, 2022, and Pizzuto was moved out of isolation one day later. *Id.* ¶ 38.

On February 24, 2023, Defendant Labrador, now Idaho's Attorney General, obtained a third death warrant, scheduling Pizzuto's execution for March 23, 2023. *Id.* ¶ 43. Contemporaneously, Defendant Labrador publicly acknowledged that IDOC still did not have the chemicals needed to carry out the lethal injection, *id.* ¶ 43, but he noted that IDOC was "working hard to acquire the chemicals necessary to fulfill this death warrant." *Id.*

Pizzuto filed this Section 1983 action *in forma pauperis* on February 24, 2023, claiming that Defendants have violated and will continue to violate his Eighth and Fourteenth Amendment rights by repeatedly rescheduling his execution despite knowing they cannot carry it out. *See generally Compl.*, Dkt. 1. The Court granted Pizzuto's application to proceed *in forma pauperis* and ordered expedited briefing to assist the Court in performing the initial screening required under 28 U.S.C. § 1915(e). Dkt. 8. The following day, Pizzuto filed a Motion for Preliminary Injunction (Dkt. 10) and the Court ordered Defendants to respond by the deadline previously set for expedited briefing on the initial screening. Dkt. 12.

On March 9, 2023, this Court issued an order in a related habeas case, *Pizzuto v. Richardson*, staying Pizzuto's execution until his petition for writ of habeas corpus can be adjudicated. Case No. 1:22-cv-00452-BLW, *Order Granting*

*App. For Stay of Exec.*, Dkt. 19.[4] Due to the stay, the Court vacated its previous order in this case for expedited briefing on the initial screening and motion for preliminary injunction, explaining that new briefing deadlines would be set in a separate order. Dkt. 14. At Defendants' request, the Court allowed them until April 14, 2023, to either brief the initial screening or file a motion to dismiss. Dkt. 18. Defendants chose the latter, filing a Motion to Dismiss for Failure to State a Claim (Dkt. 20) on April 14, 2023. Pizzuto responded on May 19, 2023, and Defendants' time to reply expired fourteen days later. Dkt. 25.

Defendants' Motion to Dismiss (Dkt. 20) is now fully briefed and ready for a decision.

## LEGAL STANDARD

To survive dismissal under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In making that determination, a court must accept as true all factual allegations in the

---

[4] That stay remains in effect. *See* Case No. 1:22-cv-00452-BLW, *Order Granting App. For Stay of Exec.*, Dkt. 19. As Defendants request, the Court takes judicial notice of the stay order under Federal Rule of Evidence 201.

complaint and construe them in the light most favorable to the plaintiff. *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).[5]

## ANALYSIS

Pizzuto claims that Defendants violate his Eighth and Fourteenth Amendment rights by repeatedly obtaining death warrants and taking preparatory steps toward execution when they lack the "ability to actually carry out the intended execution." *Compl.* ¶¶ 46–60, Dkt. 1. Pizzuto's Eighth Amendment claim is plausible, but he has not exhausted his administrative remedies as to Defendant Tewalt and Defendant Richardson. Conversely, Pizzuto's Fourteenth Amendment claim is not plausible as to any of the Defendants.

The Court will therefore grant Defendants' Motion, in part, dismissing the Eighth Amendment claims against Defendant Tewalt and Defendant Richardson, and dismissing the Fourteenth Amendment claims altogether. In all other respects, the Motion will be denied.

**1.    Pizzuto has stated a plausible Eighth Amendment claim.**

The Eighth Amendment to the United States Constitution prohibits "cruel and unusual punishment." U.S. CONST. amend. VIII; *see also Robinson v.*

---

[5] "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison*, 668 F.3d at 1112.

*California*, 370 U.S. 660, 666 (1962) (Eighth Amendment applicable to the states through the Fourteenth Amendment). While the death penalty is not itself unconstitutional, *Gregg v. Georgia*, 428 U.S. 153, 187 (1976), a particular method of execution will violate the Eighth Amendment if it "intensifie[s] the sentence of death with a (cruel) superadd[ition] of terror, pain, or discrace." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1124 (2019). To challenge a state's method of execution, "a prisoner must show a feasible and readily implemented alternative method that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason." *Id.* at 1125 (citing *Glossip v. Gross*, 576 U.S. 863, 868–69 (2015)); *see also Baze v. Rees*, 553 U.S. 35, 52 (2008). In other words, a prisoner must show that the state's method unnecessarily intensifies the severity of pain otherwise inherent in a death sentence.

Pizzuto claims that Defendants inflict cruel and unusual punishment by repeatedly re-scheduling his execution despite knowing that they cannot carry it out. *Compl.* ¶¶ 53, 58, Dkt 1. With each new death warrant, Pizzuto explains, he must repeat the preparatory steps of designating who will witness his execution and to whom his property and remains will be left. *Id.* ¶ 27. Additionally, each time a new death warrant issues, he is moved from his cell block to the Execution Unit

MEMORANDUM DECISION AND ORDER - 7

located "in a separate building that provides for complete isolation . . . from other inmates." *Id.*

Pizzuto claims that Defendants' "series of abortive attempts" at execution amounts to "psychological torture," *id.* ¶¶ 49, 58, and he reports suffering "intense psychological symptoms" as a result, such as losing track of time, losing sleep, dissociating from reality, and experiencing mental anguish and torment. *Id.* ¶¶ 39, 40, 49. Without a court order, he alleges, the State will "continue to seek and re-seek death warrants . . . whether or not [it] has the necessary lethal injection chemicals, until [he] dies of natural causes or is executed." *Id.* ¶ 44. In short, he will be dragged to the "precipice" of death and forced to re-live the terror of his impending execution over and over again, for the rest of his life. *Id.* ¶ 53.

Defendants ask the Court to dismiss Pizzuto's Eighth Amendment claim for several reasons. First and foremost, they contend that "any anxiety, uncertainty, or other mental health symptoms" that Pizzuto has allegedly experienced "do not rise to the level of a Constitutional deprivation." *Def.'s Memo. in Supp.* at 10, Dkt. 20-1. Rather, those psychological conditions are simply "attendant to the lawful sentence imposed." *Id.* at 9. Next, Defendants argue that state officials' conduct can only violate the Eighth Amendment if it is "wanton." *Id.* at 7 (quoting *Wilson v. Seiter*, 501 U.S. 294, 302 (1991)). Wantonness, they explain, includes "intent or purpose to cause harm" or "deliberate indifference" to suffering—neither of which

is present here. *Id.* Third, Defendants argue that Pizzuto's claim is "very similar to delay in execution claims," which federal courts have consistently rejected. *Id.* at 8. Finally, they note that an Idaho statute requires Defendant Richardson to transfer Pizzuto to solitary confinement each time a death warrant is issued, yet Pizzuto "has made no argument that Idaho Code § 19-2705(3) is unconstitutional on its face or as applied." *Id.* at 11.

Before addressing Defendants' points, it is important to make clear what the Court is and is not doing here. The decision whether to dismiss this case under Rule 12(b)(6) does not hinge on the likelihood that Pizzuto will ultimately succeed. Nor does it depend on the credibility of his factual allegations. Instead, at this stage, the Court must only decide whether Pizzuto's claims are plausible. Put another way, if the Court assumes the truth of Pizzuto's factual allegations, has he plausibly alleged an Eighth Amendment claim? So long as the answer is "yes," Defendants' Motion must be denied and Pizzuto given an opportunity to proceed.

Under that low standard, Pizzuto's Eighth Amendment claim survives. As Pizzuto describes it, Defendants' repeated rescheduling of his execution is like dry firing in a mock execution or a game of Russian roulette. With each new death warrant comes another spin of the revolver's cylinder, restarting the thirty-day countdown until the trigger pulls. Not knowing whether a round is chambered, Pizzuto must re-live his last days in a delirium of uncertainty until the click sounds

and the cylinder spins again. Defendants' alleged practice of keeping Pizzuto in a state of perpetual terror by scheduling and re-scheduling his execution, despite knowing that the lethal injection almost certainly will not be performed, plausibly constitutes cruel and unusual punishment in violation of the Eighth Amendment. None of Defendants' arguments to the contrary are persuasive.

First, Pizzuto alleges more than mere psychological harms that are inherent in every death sentence. Instead, he specifically ties his alleged suffering to the repeated rescheduling of the execution. Of course, it may ultimately be true, as Defendants argue, that Pizzuto's reported suffering is not severe enough to rise to the level of "cruel and unusual." But the degree of harm Pizzuto suffers is better measured after an evidentiary hearing where the facts are more fully developed. *See McGary v. City of Portland*, 386 F.3d 1259, 1270 (9th Cir. 2004) ("Rule 12(b)(6) dismissals are especially disfavored in cases where the complaint sets forth a novel legal theory that can best be assessed after factual development.") (internal quotation marks omitted). For now, it is enough that Pizzuto has alleged psychological torment that falls within the range of suffering that the Ninth Circuit and U.S. Supreme Court have recognized as cognizable under the Eighth Amendment. *See, e.g.*, *Jordan v. Gardner*, 986 F.2d 1521, 1531 (9th Cir. 1993) (finding "serious psychological suffering" resulting from cross-gender body searches "sufficient to meet the constitutional minima" of cruel and unusual

punishment); *Watison*, 668 F.3d at 1112–13 ("The alleged pain may be physical or psychological . . . [but] "severe psychological pain [is] required to state an Eighth Amendment claim."); *see also Baze*, 553 U.S. at 49 ("Punishments are cruel when they involve torture or a lingering death" or "something inhuman and barbarous, something more than the mere extinguishment of life.") (quoting *In re Kemmler*, 136 U.S. 436, 447 (1890)).

Next, Pizzuto has adequately alleged the requisite mental state. As the Ninth Circuit has explained, "[a]fter incarceration, only the unnecessary and *wanton* infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Jordan*, 986 F.2d at 1525 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)) (emphasis added). Wantonness, in turn, means intentional disregard or deliberate indifference to suffering. *Minneci v. Pollard*, 565 U.S. 118, 130 (2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Thus, psychological trauma resulting from a mere accident during the administration of the death penalty will not give rise to an Eighth Amendment claim. *See State of La. ex. Rel. Francis v. Resweber*, 329 U.S. 459, 464 (1947). Here, Pizzuto claims that Defendant Labrador has obtained, and will continue to obtain, death warrants "with the expectation" that they will "not result in an execution." *Compl.* ¶ 45, Dkt. 1. That allegation, together with Pizzuto's assertion that Defendant Labrador is aware of his suffering but will "continue to seek and re-seek death warrants . . . until Mr.

MEMORANDUM DECISION AND ORDER - 11

Pizzuto dies of natural causes or is executed," *id.* ¶ 44, reflects deliberate indifference to suffering.

Next, Defendants' attempt to compare Pizzuto's claim to delay-in-execution claims is also unpersuasive. Pizzuto alleges psychological trauma resulting from the state repeatedly taking him to the "precipice of execution." *Memo. in Supp.* at 8, Dkt. 20-1. That fundamentally differs from delay-in-execution claims, which challenge the mere "passage of time" between an inmate's sentencing and execution. Here, it is not merely Defendants' failure to swiftly carry out the execution that Pizzuto challenges, but rather their repeated rescheduling of an execution they know cannot be performed. *Compl.* ¶ 51, Dkt. 1.

Finally, Defendants' characterization of themselves as powerless to the dictates of state law (Idaho Code § 19-2705(3)) is unpersuasive.[6] Federal courts unquestionably have authority to enjoin state officials from enforcing state laws in a manner that would violate the United States Constitution. *See Ex Parte Young*, 209 U.S. 123 (1908). Here, Pizzuto asks the Court to enjoin Defendant Labrador, a state official, from continuing to obtain "illusory" death warrants because doing so ostensibly violates the Eighth Amendment. *Id.* ¶ 54–60. Regardless of how

---

[6] The question of whether Defendant Labrador properly interprets Idaho law as requiring him to continue seeking ineffectual death warrants is a question for another day. *See Compl.* ¶ 61.b, Dkt. 1.

**MEMORANDUM DECISION AND ORDER - 12**

Defendant Labrador interprets state law, there is nothing implausible about Pizzuto obtaining the requested injunctive relief if he succeeds on the merits of his case.

In sum, Pizzuto's Eighth Amendment claim is plausible, and the Court will not dismiss it under Rule 12(b)(6).

**2.     Pizzuto has not stated a plausible Fourteenth Amendment claim.**

Next, Pizzuto claims that the same conduct that violates his Eighth Amendment rights also violates his Fourteenth Amendment right to procedural due process. *Id.* ¶ 54–60. But this creative attempt to smuggle another Eighth Amendment claim through the due process door is unavailing.

A claim that a method of execution is cruel and usual "falls squarely within the ambit of the Eighth Amendment—not the Due Process Clause." *Prieto v. Clarke*, 780 F.3d 245, 251 (4th Cir. 2015) (cited approvingly in *Johnson v. Ryan*, 55 F.4th 1167, 1180 (9th Cir. 2022)). And understandably so—it is the Eighth Amendment that prohibits cruel and unusual punishments. Procedural due process protections, in contrast, guarantee inmates adequate *procedural* safeguards when states carry out their sentences.

Pizzuto asks the Court to enjoin Defendants from obtaining another death warrant and taking preparatory steps for his execution until they can acquire the necessary lethal-injection chemicals. *Compl.* ¶¶ 61.b & c, Dkt. 1. Without this "procedural safeguard," he claims he will suffer cruel and unusual punishment. If

this argument sounds familiar, it should; it is simply another Eighth Amendment claim wrapped in different paper. But dressing this claim in due process garb does not change its underlying character. The truth is that Pizzuto is not really claiming a deprivation of procedural due process, such as a lack of opportunity "to be heard in a meaningful manner . . . concerning the constitutionality of the processes that will be used to execute him." *Villegas Lopez v. Brewer*, 680 F.3d 1068, 1083 (9th Cir. 2012) (Berzon, J., concurring in part and dissenting in part). Instead, he is seeking to prohibit Defendants from inflicting unnecessary psychological pain in carrying out his execution. This is simply not a procedural due process claim.

Pizzuto has not stated a plausible procedural due process claim and his Fourteenth Amendment claim will therefore be dismissed.

**3.    Pizzuto has standing and has properly named each Defendant.**

Defendants also argue that Pizzuto lacks standing and has improperly named them as defendants. Although framed differently, both arguments boil down to the same point: Pizzuto's Prayer for Relief seeks to enjoin "Defendants," generally, without specifying which particular form of relief is sought against which particular defendant. *See Compl.* ¶¶ 61.b & c, Dkt. 1.

The Court is not persuaded that the wording of Pizzuto's Prayer for Relief justifies dismissal. As Pizzuto explains, "[a]ll of the named defendants played a role in the [alleged] constitutional violations." *Pl.'s Resp.* at 13, Dkt. 25. Defendant

MEMORANDUM DECISION AND ORDER - 14

Tewalt "is responsible for approving the substances and procedures to be used in any execution performed by IDOC." *Compl.* ¶ 16, Dkt. 1. Upon issuance of each death warrant, Defendant Richardson "ensure[s] the condemned person is placed in solitary confinement." *Memo. in Supp.* at 14, Dkt. 20-1. And Defendant Labrador "is the one who obtains the death warrant." *Pl.'s Resp.* at 14, Dkt. 25.

Pizzuto first seeks to enjoin Defendant Labrador from obtaining any new death warrants until the State has obtained the execution chemicals necessary to perform the lethal injection. *Compl.* ¶ 61.b, Dkt. 1. And second, he seeks to enjoin Defendant Tewalt and Defendant Richardson from "undertaking any execution preparations" until those chemicals are acquired. *Id.* ¶ 61.c. It is purely semantic that Pizzuto directs both injunction requests at the "Defendants," generally, rather than matching each request to each defendant. And it is clear enough from the Complaint which requested injunction is directed at which defendant.

4. **Pizzuto failed to exhaust his administrative remedies as to Defendant Tewalt and Defendant Richardson.**

Finally, Defendants seek dismissal of the claims against Defendant Tewalt and Defendant Richardson because Pizzuto has not exhausted his administrative remedies. The Prisoner Litigation Reform Act (PLRA) bars prisoners from bringing Section 1983 lawsuits challenging conditions of their confinement "until such administrative remedies as are available are exhausted." 42 U.S.C.A.

§ 1997e(a). This administrative exhaustion requirement "is no longer left to the discretion of the district court, but is mandatory." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).

There are three stages in the administrative grievance procedures for Idaho inmates, set forth in IDOC Standard Operating Procedure 316: (1) submission of an Inmate Concern Form; (2) submission of a formal Grievance Form; and (3) if necessary, an appeal of the grievance denial. *Howard Decl.* ¶ 4, Dkt. 20-2; IDAPA 316.02.01.001.

Pizzuto took the first step by filing a Concern Form on January 11, 2023, which was denied three days later. *Pl.'s Resp.* at 15, Dkt. 25. Instead of moving to stage two, however, he followed up with another Concern Form on March 31, 2023. *Id.* at 16. As of the filing of Pizzuto's response brief, he was still "in the grievance-appeal process" and therefore had not fully exhausted his administrative remedies as required under the PLRA. The Court has not since received any update on the status of Pizzuto's grievance appeal.

Admittedly, Pizzuto makes sensible—even compelling—arguments in favor of waiving the administrative exhaustion requirement here. *See Pl.'s Resp.* at 15–18, Dkt. 25. But binding precedent leaves no doubt that the PLRA says what it means: a prisoner "*must*" exhaust his administrative remedies before bringing a lawsuit in court. *Ramirez v. Collier*, 142 S.Ct. 1264, 1275 (2022) ("[E]xhaustion is

mandatory under the Prison Litigation Reform Act of 1995 (PLRA), 42 U.S.C. § 1997e(a), even in the execution context."); *Ross v. Blake*, 578 U.S. 632, 648 (2016) ("Courts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement."). The Court cannot ignore that mandate.

## ORDER

IT IS ORDERED that:

1. Defendants' Motion to Dismiss (Dkt. 20) is **GRANTED in part and DENIED in part**, as follows:

   A. Pizzuto's Fourteenth Amendment claim is **DISMISSED** as to all Defendants;

   B. Pizzuto's Eighth Amendment claims against Defendant Tewalt and Defendant Richardson are **DISMISSED without prejudice**. If Pizzuto exhausts his administrative remedies, he may file an amended complaint within 60 days after issuance of this Order which re-alleges his Eighth Amendment claims against Defendant Tewalt and Defendant Richardson;

   C. The Motion is otherwise **DENIED** in all respects.

DATED: August 1, 2023

_____
B. Lynn Winmill
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 18**