UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GERALD ROSS PIZZUTO, JR.,<br><br>   Plaintiff,<br><br>   v.<br><br>JOSH TEWALT, Director, Idaho Department of Correction, in his official capacity, TIMOTHY RICHARDSON, Warden, Idaho Maximum Security Institution, in his official capacity, RAUL LABRADOR, Attorney General, Idaho Attorney General's Office, in his official capacity,<br><br>   Defendants. | Case No. 1:23-cv-00081-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

# INTRODUCTION

Before the Court is a Motion to Intervene (Dkt. 33) filed by Thomas Eugene Creech. For the reasons explained below, the Court will partially grant and partially deny the Motion.

# BACKGROUND

## 1. Pizzuto's Lawsuit

Plaintiff Gerald Ross Pizzuto, Jr. is an inmate on Idaho's death-row. Between May 6, 2021, and February 24, 2023, Defendant Raul Labrador, the

Attorney General of Idaho ("AG Labrador"), obtained three death warrants for Pizzuto.[1] The first death warrant expired after the Commission of Pardons and Parole granted Pizzuto a commutation hearing in the fall of 2021. The second warrant expired on December 15, 2022, because the Idaho Department of Correction (IDOC) was unable to obtain "the chemicals necessary to carry out an execution by lethal injection." *Compl.* ¶¶ 34–37, Dkt. 1. On February 24, 2023, AG Labrador obtained a third death warrant for Pizzuto but publicly acknowledged that the IDOC still had not obtained the necessary lethal injection chemicals. *Id.* ¶ 43. That warrant, too, eventually expired.

      Shortly after AG Labrador obtained the third death warrant, Pizzuto filed this lawsuit alleging a violation of the Eighth Amendment and seeking a narrow form of injunctive relief. *See generally id.* In short, Pizzuto claims that it is a violation of the Eighth Amendment for AG Labrador to continue repeatedly scheduling his execution despite knowing that the IDOC does not have the chemicals necessary to carry it out. As a remedy, Pizzuto seeks an injunction barring AG Labrador from obtaining another death warrant until he can demonstrate that the IDOC has the necessary execution drugs. *Id.* ¶ 61.

---

[1] For a thorough review of the background of this case, *see Memorandum Decision & Order*, Dkt. 26.

**MEMORANDUM DECISION AND ORDER - 2**

On March 9, 2023, Pizzuto filed a Motion for Preliminary Injunction (Dkt. 10) in this case. In August of 2023, the defendants filed a Notice of Non-Opposition (Dkt. 29), and the parties jointly submitted a proposed order granting a preliminary injunction. The Court approved Pizzuto's unopposed request and entered a preliminary injunction barring AG Labrador "from seeking a death warrant in *State v. Pizzuto*, Idaho County Case No. CR-1985-22075, until authorized to do so by this Court." *Order Granting Preliminary Injunction* at 3, Dkt. 31. That preliminary injunction remains in effect today.

## 2.     Creech's Intervention

Thomas Eugene Creech is another death-row inmate in Idaho. On January 30, 2024, the day after the Commission of Pardons and Parole denied Creech's petition for clemency, the Ada County Prosecutor's Office obtained a death warrant scheduling Creech's execution for February 28, 2024. *See Memo. Decision & Order*, No. 1:20-cv-114-AKB, Dkt. 142. Creech immediately sought to halt the execution on various grounds, No. 1:20-cv-114-AKB, Dkts. 121 & 123, but this Court rejected each of his constitutional claims and denied his Motion for Preliminary Injunction. *See id.* at Dkt. 142. On appeal, the Ninth Circuit affirmed, allowing the execution to proceed as scheduled. *Creech v. Tewalt*, 94 F.4th 859, 863 (9th Cir. 2024).

On February 28, 2024, the IDOC attempted to execute Creech by lethal injection. *Complaint-in-Intervention* ¶¶ 67–120, Dkt. 33-2. However, when the medical team was unable to adequately insert an IV catheter to inject the lethal injection drug, the execution was cancelled, and the death warrant was allowed to expire. *Id.* ¶ 120.

Following the February 28 execution attempt, Creech filed a Motion to Intervene (Dkt. 33) in this case. Creech's proposed Complaint-in-Intervention includes extensive factual allegations related to the February 28 execution attempt and seeks broad injunctive relief. *See generally Complaint-in-Intervention*, Dkt. 33-2. He claims that, considering the "botched" execution attempt, the State should be barred from making another attempt until it can establish that it has "secured and [is] capable of carrying out a valid method of execution that comports with constitutional requirements." *Id.* ¶ 240. While Creech alludes to the State's lack of "sufficient lethal injection chemicals," his allegations focus on the medical team's inability to establish an adequate IV line, and the likelihood of similar complications arising during any future execution attempt. *Id.* ¶ 227 ("Even if it did have a sufficient amount of those chemicals, there is no reason to believe the State would be any more successful at administering them to Mr. Creech now than in its failed attempt on February 28th."); *see also id.* ¶¶ 67–156, 178–215, 228–235.

MEMORANDUM DECISION AND ORDER - 4

Creech's Motion to Intervene (Dkt. 33) is now fully briefed and ripe for decision. As explained below, Creech is not entitled to intervention of right. Nor will he be permitted to intervene and assert a broad Eighth Amendment claim based upon the February 28 execution attempt. Creech will, however, be permitted to intervene on a limited basis; that is, to the extent he seeks to bar the State from obtaining another death warrant until it has acquired the execution drugs necessary to perform a lethal injection.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 24 governs intervention. "Intervention is a device that allows a person to join someone else's lawsuit." 1 STEVEN S. GENSLER, FEDERAL RULES OF CIVIL PROCEDURE, RULES AND COMMENTARY RULE 24 (2024 ed.). There are two kinds of intervention: intervention of right and permissive intervention. If a would-be intervenor satisfies the requirements for intervention of right, a court must permit intervention. On the other hand, if a would-be intervenor only satisfies the lesser requirements for permissive intervention, a court may, in its discretion, grant or deny intervention. *See* FED. R. CIV. P. 24(a) & (b).

### 1. Intervention of Right

"An applicant seeking to intervene as of right under Rule 24 must demonstrate that four requirements are met: (1) the intervention application is timely; (2) the applicant has a significant protectable interest relating to the

property or transaction that is the subject of the action; (3) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; and (4) the existing parties may not adequately represent the applicant's interest." *Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (internal citation and quotation marks omitted) (hereinafter *CBU*). The applicant bears the burden of showing that these four elements are met, but "Rule 24(a) is construed broadly in favor of intervenors[.]" *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011).

The timeliness of an intervention request depends upon three factors: "(1) the stage of the proceedings; (2) whether the parties would be prejudiced; and (3) the reason for any delay in moving to intervene." *Nw. Forest Resource Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (citing *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990)). Here, there is no dispute that Creech's Motion is timely. This case is relatively young, and Creech promptly sought intervention just fifteen days after the February 28 execution attempt.

Next, a would-be intervenor must have a significant protectable interest in the action. *CBU*, 647 F.3d at 897. This is a "practical, threshold inquiry," and "[n]o specific legal or equitable interest need be established." *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993). It is enough to show that "the interest is protectable under some law and that there is a relationship between the legally

protected interest and the claims at issue." *CBU*, 647 F.3d at 897. "If these two core elements are not satisfied," however, "a putative intervenor lacks any 'interest' under Rule 24(a)(2), full stop." *California Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1088 (9th Cir. 2022).

A would-be intervenor must also show that disposition of the action may, as a practical matter, impair or impede its ability to protect its own interest. *CBU*, 647 F.3d at 897. "The prospect of stare decisis may, under certain circumstances, supply the requisite practical impairment warranting intervention as of right." *United States v. Stringfellow*, 783 F.2d 821, 826 (9th Cir. 1986), *vacated on other grounds by* 480 U.S. 370 (1987). For example, "a person whose own rights are so closely related to the parties' rights that the precedential effect of the case will be all but dispositive of theirs does have an interest sufficient to support intervention." *Gensler*, *supra*; *see also Greene*, 996 F.2d at 977 ("Where the precedential impact has been clear, we have allowed intervention."). Conversely, however, intervention of right will not be granted when impairment through stare decisis is merely "speculative." *Greene*, 996 F.2d at 978; *see also Northern California River Watch v. Fluor Corp.*, Case No. 10–cv–05105–MEJ, 2014 WL 3385287, at *17 (N.D. Cal. July 9, 2014).

Finally, a would-be intervenor must show that its interest in the action is not adequately represented by an existing party. *See Callahan v. Brookdale Senior*

MEMORANDUM DECISION AND ORDER - 7

*Living Communities, Inc.*, 42 F.4th 1013, 1020 (9th Cir. 2022). In the Ninth Circuit, this analysis is based upon three factors: "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *Id.* (quoting *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)).

### 2.     Permissive Intervention

The threshold requirements for permissive intervention are less demanding than those for intervention of right. A court may permit intervention under Rule 24(b) if the applicant has shown: "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *Nw. Forest Resource Council*, 82 F.3d at 839 (citing *Greene*, 996 F.2d at 978; *see also* FED. R. CIV. P. 24(b)).

In deciding whether permissive intervention is appropriate, courts "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3). Courts may also consider other factors, including "the nature and extent of the intervenors' interest" and "whether the intervenors' interests are adequately represented by other parties."

*Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 955 (9th Cir. 2009) (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)); *see also Gensler*, *supra* ("A finding that allowing intervention will greatly expand the scope of discovery and prolong and complicate the lawsuit may lead the court to deny the motion.").

**3.      Limited Intervention**

Federal district courts' authority over intervention is not strictly binary. Courts may, for example, "limit intervention to particular issues." *Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 741 (9th Cir. 2011) (quoting *Van Hoomissen v. Xerox Corp.*, 497 F.2d 180, 181 (9th Cir. 1974)); *see also Gensler*, *supra* ("It is well-established that the court may limit the participation of an intervenor."); 7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1922 (3d ed. 2023) ("Since the trial court has full discretion to grant or deny an application for permissive intervention under Rule 24(b), it may if it chooses impose conditions on its grant of the application."). A court therefore "might preclude the intervenor from raising new claims or limit the intervenor's ability to take discovery." *Gensler*, *supra*; *see, e.g.*, *Dep't of Fair Emp. & Hous.*, 642 F.3d 728 (affirming grant of limited intervention); *United States v. Idaho*, 342 F.R.D. 144, 148 (D. Idaho Aug. 13,

MEMORANDUM DECISION AND ORDER - 9

2022), *appeal dismissed by* 2024 WL 1504346 (9th Cir. Apr. 8, 2024) (permitting intervention "on a limited basis").

## ANALYSIS

**1.      Creech is Not Entitled to Intervene as of Right**

Creech has not satisfied the second and third requirements for intervention of right under Rule 24(a). First, Creech lacks a significant protectable interest that is related to "the claims at issue" in this case. *CBU*, 647 F.3d at 897. Here, Pizzuto claims that AG Labrador repeatedly rescheduled his execution despite knowing the State lacked the chemicals necessary to perform a lethal injection. *See Compl.* ¶ 2, Dkt. 1. According to Pizzuto, the act of repeatedly obtaining dead letter death warrants violated the Eighth Amendment by unnecessarily placing him "in a state of perpetual terror." *Mem. Decision & Order* at 10, Dkt. 26. Creech, in contrast, does not claim that the State has ever obtained a death warrant for him despite knowing that it lacked lethal injection drugs. *See generally Complaint-in-Intervention*, Dkt. 33-2. Nor does Creech appear to root his Eighth Amendment claim in the act of obtaining a death warrant, itself, but rather in the risk that future execution attempts will be "botched." *Id.* ¶¶ 225, 227–29; *see also Memo. in Supp.* at 4, Dkt. 33-1 ("Mr. Creech's faux execution took place in a world in which the State *did* have those chemicals but still could not deploy them[.]"). Although Creech may have a "significant protectable interest" in avoiding another "botched"

execution, that interest is not *related to* the discrete Eighth Amendment claim asserted by Pizzuto in this case. *See CBU*, 647 F.3d at 897 ("[A]n applicant must establish that . . . there is a relationship between the legally protected interest and the claims at issue."). Creech simply does not have the kind of interest in this litigation that would entitle him to intervene.

Next, Creech has not shown that disposition of this action may, as a practical matter, impair or impede his ability to protect his own interest. According to Creech, "[i]t is easy to imagine a scenario in which an adverse decision issued by this Court against Mr. Pizzuto at a later stage of litigation, or by the Ninth Circuit on appeal, was written broadly enough that it foreclosed relief for Mr. Creech as well." *Reply* at 6, Dkt. 37. But speculation about the possible future effects of stare decisis is ordinarily not enough to justify intervention of right. *See Greene*, 996 F.2d at 978. Pizzuto's factual allegations and prayer for relief in this action are quite narrow. *See generally Compl.*, Dkt. 1. Creech's broader Eighth Amendment claim, which focuses primarily on vein-access concerns, is not "so closely related" to Pizzuto's claim that "the precedential effect of th[is] case will be all but dispositive" if Creech brings a separate action. *Gensler, supra*.

Ultimately, Creech may choose to file a separate lawsuit asserting Eighth Amendment claims rooted in the failed February 28 execution attempt. And that is

his prerogative. All the same, he has not shown that he has a right to a seat at *this* table.

**2.     Limited Permissive Intervention is Appropriate**

Although Creech and Pizzuto's Eighth Amendment claims fundamentally differ, there is some overlap. Namely, both inmates allege that the State lacks the necessary execution drugs to perform a lethal injection, and that it is the defendants' policy to continually seek death warrants regardless of their inability to perform an execution. *See Compl.* ¶ 44, Dkt. 1; *Complaint-in-Intervention* ¶¶ 216 & 226, Dkt. 33-2. Considering that overlap, the Court will permit Creech to intervene in this case on a very limited basis.

We turn first to the three threshold requirements for permissive intervention. The first two are undisputed and plainly satisfied here. Creech alleges independent grounds for jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights violations), 2201(a) (declaratory relief), and 2202 (further relief). *See Freedom from Religion Found., Inc.*, 644 F.3d at 841 (discussing purpose of independent jurisdictional grounds requirement). And, under the three factors set forth in *Northwest Forest Resource Council*, his Motion to Intervene (Dkt. 33) is timely. 82 F.3d at 839. The third threshold requirement for permissive intervention is also satisfied. Creech and Pizzuto's claims share at least one common question of law or fact. Both, for example, raise the questions of when psychological

MEMORANDUM DECISION AND ORDER - 12

torment may form the basis of an Eighth Amendment claim, and whether the IDOC has obtained the chemicals necessary to perform a lethal injection.

Having concluded that Creech satisfies the threshold requirements for permissive intervention under Rule 24(b), the Court must now decide whether intervention is a good idea. The first question is whether intervention would cause undue delay or prejudice to the original parties. FED. R. CIV. P. 24(b)(3). Creech thinks not, noting that this case is still in its early stages and discovery has not begun. *Memo. in Supp.* at 3, Dkt. 33-1. But although this case is relatively young, its scope is narrow and considerable progress has already been made toward a resolution. *See* Dkts. 26 & 31. Pizzuto has secured a narrow preliminary injunction barring AG Labrador from obtaining another death warrant until the State has obtained lethal injection chemicals. *See Order Granting Preliminary Injunction*, Dkt. 31. Meanwhile, Creech seeks to open a distinct and expansive chapter in this litigation related to the State's inability to establish an IV line during the February 28 execution attempt. Ultimately, wholesale intervention by Creech would greatly expand the scope of this litigation and substantially delay a final "adjudication of the original parties' rights." FED. R. CIV. P. 24(b).

Creech will, however, be permitted to intervene on a very limited basis. In his proposed Complaint-in-Intervention (Dkt. 33-2), Creech alleges that the State currently lacks sufficient lethal injection chemicals to perform an execution. *Id.* ¶

MEMORANDUM DECISION AND ORDER - 13

226. Nevertheless, he alleges, Ada County Prosecutor Jan Bennetts intends to obtain a new death warrant pursuant to her belief that the State "is legally required to continue to seek and re-seek execution warrants for death row inmates who, like Mr. Creech, have no stay of execution in place." *Id.* ¶¶ 216–219. These allegations, unlike those related to Creech's vein-access concerns, resemble the allegations Pizzuto has asserted in this lawsuit. Allowing Creech to intervene for the limited purpose of asserting a parallel claim based upon the State's alleged practice of repeatedly obtaining lame duck death warrants would not unduly delay or expand the scope of this litigation. The Court will therefore permit Creech to intervene on this limited basis. *See Gensler*, *supra* ("It is well-established that the court may limit the participation of an intervenor.").

Because the Court will allow limited permissive intervention, it must also address AG Labrador's objection to the addition of Ada County Prosecutor Jan Bennetts as a defendant. AG Labrador notes that Bennetts, who has statutory authority to seek death warrants for Creech, is not an existing party to this lawsuit. *Def.'s Memo. in Opp.* at 6, Dkt. 35. According to AG Labrador, to add a new defendant, Creech must satisfy the standard for party joinder under Federal Rule of Civil Procedure 19. Creech disagrees, arguing that Rule 19 does not apply here because intervention and joinder are "*alternative* bases for inserting new defendants into existing litigation." *Reply* at 7, Dkt. 37 (emphasis in original)

MEMORANDUM DECISION AND ORDER - 14

(citing Richard D. Freer, *The Cauldron Boils: Supplemental Jurisdiction, Amount in Controversy, and Diversity of Citizenship Class Actions*, 53 EMORY L.J. 55, 69 n.80 (2004)). And in any case, Creech contends, AG Labrador himself appears to agree that Bennetts is a necessary party who would be joined as a defendant under Rule 19(a)(1)(A), even if that rule did apply. *Id.* at 7.

Creech is right. The fact that he seeks to add a defendant is not itself a reason to deny intervention. Like an existing plaintiff who adds a defendant by filing an amended complaint, an intervening plaintiff may add a proper defendant through his complaint-in-intervention. Of course, if AG Labrador believes that Bennetts is not a proper party to this action under Rule 19 (required joinder) or Rule 20 (permissive joinder), he may object by filing his own motion. *See, e.g.*, *Blake v. Pallan*, 554 F.2d 947, 958 (9th Cir. 1977) (affirming dismissal of intervenor's complaint following grant of permissive intervention). At this stage, however, the mere fact that Creech seeks to add a defendant—one whom AG Labrador seems to concede is proper—does not defeat his intervention request.[2]

### 3. Conclusion

---

[2] To be sure, a would-be intervenor's intent to add a new defendant may affect the intervention analysis under Rule 24(b). The addition of a defendant may, for example, "unduly delay or prejudice the adjudication of the original parties' rights." FED. R. CIV. P. 24(b)(3). But that is not the case here, where the original and additional defendants perform parallel functions, and where adding a defendant would not meaningfully alter or expand the scope of the underlying litigation.

Creech is not entitled to intervention of right. Nor will the Court allow wholesale permissive intervention, which would substantially expand the scope of this litigation and cause undue delay. The Court will, however, permit Creech to intervene to the extent he seeks to assert an Eighth Amendment claim, like Pizzuto's, based upon the State's alleged practice of repeatedly obtaining death warrants when it lacks the necessary lethal injection chemicals to perform an execution.

## ORDER

**IT IS ORDERED that** Thomas Eugene Creech's Motion to Intervene (Dkt. 33) is **GRANTED, in part, and DENIED, in part**, as set forth in this Order. If Creech chooses to intervene as allowed by this Order, he must file a complaint-in-intervention no later than May 10, 2024. Creech shall not be added as an intervening party in this case unless and until he files a complaint-in-intervention.

DATED: April 29, 2024

_____
B. Lynn Winmill
U.S. District Court Judge